UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 09-80572-CIV–MARRA/JOHNSON

JOHANE TILLERY,

    Plaintiff,
v.

JANET NAPOLITANO,
Secretary, Department of
Homeland Security,

    Defendant.
_____/

## ORDER AND OPINION GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Complaint [DE 6]. The motion is fully briefed and ripe for review. The Court has carefully considered the entire Court file, and is otherwise fully advised in the premises.

### Introduction and Background

Plaintiff, Johane Tillery ("Tillery" or "Plaintiff") worked as a Transportation Security Officer at Palm Beach International Airport ("PBIA") and was employed by the Transportation Security Administration ("TSA").[1] Compl. ¶¶ 4, 6, 8-11. Tillery brings this action under the Civil Rights Act of 1964, § 701 *et seq.*, as amended by 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1991, § 102 *et seq.* ("Title VII"), "to redress the wrongs done to her by the Department [of Homeland Security]'s (the

---

[1] The Transportation Security Administration is a component of the Department of Homeland Security.

"Department") failure to protect her from retaliation after she complained about the workplace environment." Compl. ¶ 1.  Tillery alleges that beginning in December 2005, she was subjected to sexual harassment from her manager, Larry Davis.  Compl. ¶ 6.  "This harassment included, but was not limited to, Mr. Davis' request for sexual activity, telephoning Tillery after work hours, and following her both in and outside the workplace.  On February 16, 2006, Tillery complained of the harassment to the Department.  Following her complaint, Mr. Davis was transferred from the PBIA facility."  Compl. ¶¶ 7-8.

Three months later, Tillery's husband was transferred by his employer to Arizona.  In an attempt to have a job in Arizona as well, Tillery requested the TSA transfer her to Tuscon International Airport.  Compl. ¶¶ 9-10.  "Tillery was initially told, on April 13, 2006, that her transfer request was approved, however, after the facility in Arizona spoke to her supervisors at PBIA, Tillery was told, on May 5, 2006, that she could not transfer."  Compl. ¶ 11.  "The information conveyed by the supervisor at PBIA was false and misleading and done in an effort to retaliate against Tillery for her prior complaint of harassment."  Compl. ¶ 12; *see also* ¶ 21.  Then, in early June 2006, Tillery "was terminated from her employment in retaliation of her complaint."  Compl. ¶ 22.  Plaintiff asserts that she has satisfied all conditions precedent to bring suit in federal court.  Compl. ¶ 15.  Defendant moves to dismiss on the basis that Plaintiff has failed to exhaust her administrative remedies.

**Standard of Review**

"Deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008).  First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.  *See Bryant,* 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. *Bryant,* 530 F.3d at 1373-74, 1376.  Defendant bears the burden of proving that plaintiff has failed to exhaust her available administrative remedies.  *See Jones v. Bock,* 549 U.S. 199 (2007); *Dixon v. United States*, 548 U.S. 1, 8 (2006).  Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the Plaintiff has exhausted her available administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.  *Bryant*, 530 F.3d at 1376.  In reviewing the filings in this case, the Court noted that exhibits

had been filed in support of, and in opposition to, the instant motion. Considering these affidavits and evidence does not require conversion to summary judgment. *Bryant*, 530 F.3d at 1371. In order to ensure that the parties had exercised their right to develop the record, however, the Court gave the parties an opportunity to supplement the record, which they did [DE 18]. Plaintiff has been given "a meaningful opportunity to oppose" dismissal. *Id*. at 1371 n.2. The Court has carefully considered all filings, including Plaintiff's supplemental evidence [DE 19] and Defendant's response to the supplemental filings [DE 20].

**Discussion**

Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult an Equal Employment Opportunity ("EEO") Counselor prior to filing a federal complaint in order to try to informally resolve the matter. Federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the agency's EEO office within 45 days[2] of the alleged discriminatory act. 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105(a)(1); *see also Mullins v. Crowell*, 228 F.3d 1305, 1310-11 (11th Cir. 2000). "Generally, when the claimant does not initiate contact within the 45-day charging period, the

---

[2] The agency or the Commission "shall extend the 45-day limit ... when the individual shows ... that he or she did not know and reasonably should not have [ ] known that the ... personnel action occurred." 29 C.F.R. § 1614.105(a)(2). Plaintiff does not assert that she was unaware of the alleged discriminatory conduct.

claim is barred for failure to exhaust administrative remedies." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008); *see also, Brown v. Snow*, 440 F.3d 1259, 1264-65 (11th Cir. 2006).

The EEO Counselor's Report in this case indicates that Tillery first contacted the TSA's EEO agency, the Office of Civil Rights and Liberties ("OCRL"), on July 11, 2006. The only retaliatory act alleged by Tillery was the April 24, 2006 denial of a transfer to the Tucson International Airport. DE 6-2. The report indicates that Tillery "stated as a result of the denied transfer, she was forced to resign from her position at PBI." DE 6-2 at 5. The OCRL process did not resolve the dispute, and a "Notice of Final Interview and Right to File a Formal Complaint" was mailed to Tillery on November 7, 2006. *Id*.

The instant one count complaint alleges two incidents of retaliation for having complained of a hostile work environment: (1) on May 5, 2006,[3] she was denied the transfer to Arizona because her supervisors at PBIA gave the Arizona office false and misleading information about her work performance; and (2) in "early June 2006,"[4]

---

[3] It should be noted that the EEO/OCRL Report states that Tillery reported she was informed of the transfer denial on April 24, 2006. In her complaint, however, Plaintiff states she first learned of the denial of her transfer request on May 5, 2006. Presuming the complaint's allegation of May 5, 2006 is correct, Plaintiff was required to contact an EEO counselor on or before June 19, 2006. Plaintiff contacted the OCRL on July 11, 2006.

[4] Plaintiff does not state on what specific day she was terminated, but states in her affidavit: "As a result of the transfer being denied, I was placed on leave on May 8, 2006 and told that the leave would expire one month later at which time if I did not return to work at PBIA, my employment would be terminated." Tillery

she was terminated from her employment.  Compl. ¶¶ 20-22.

1. **Transfer Request**

Tillery acknowledges that she did not report to the OCRL the retaliatory denial of her transfer within the 45 day window.  DE 9 at 4.  Tillery does not assert that she was unaware of the time limit but rather argues that she was unable to timely contact the OCRL for "circumstances beyond her control." *Id*.  The extenuating circumstances consist of her being on leave as of May 8, 2006 (three days after learning of the denial).  According to Plaintiff, while on leave, using the telephone was her only means of contacting the OCRL.

Plaintiff reveals for the first time in her response to the motion to dismiss that she "attempted to contact an EEO Counselor no less than three to four times a week over the 25 to 30 day period prior to finally receiving a return telephone call on July 11, 2006," (outside the 45-day reporting period).  Tillery Affidavit, DE 9-2, ¶ 12.  Plaintiff argues that this statement raises a genuine issue of material fact which should be addressed by a jury.  Plaintiff also asserts that her "May 30, 2006, letter to Federal Security Director should satisfy the EEO counselor contact requirement."  DE 9 at 6.

As discussed previously, as long as the disputed issue does not go to the merits, but rather addresses the issue of exhaustion, this Court is to make findings on the

---

Affidavit, ¶ 10.

disputed issues of fact, and then decide under those findings whether Plaintiff has exhausted her available administrative remedies.  *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008); *Bryant*, 530 F.3d at 1376.   The questions of whether Tillery timely initiated an administrative review of her claim, or if not, whether the time should be tolled, do not go to the merits.  Therefore,  the Court will resolve these questions at this stage.

Defendant has submitted the declaration of Janet White ("White"), the Manager of the Informal/ARC Division of the U.S. Department of Homeland Security/ Transportation Security Administration's Office of Civil Rights and Liberties.  White Decl., DE 12-2.  In her declaration, White presents the protocol for the TSA's OCRL. White reports that TSA's OCRL has always had a Hotline available 24 hours a day, 7 days a week, where employees/complainants can leave messages regarding EEO concerns.  White Decl. ¶ 2.  The OCRL protocol is to return messages left on the Hotline voicemail box within 24 business hours.  White Decl. ¶ 3.  In 2006 in particular, EEO counselors were assigned a day to be responsible for calls to the Hotline.  *Id*.  When a counselor was on Hotline duty, the same routine was followed: the counselor would check the Hotline voicemail every day, record information on the incoming-case spreadsheet, return the call, and supplement the entry in the incoming-case spreadsheet with information acquired as a result of the conversation between the EEO counselor and the complainant.  *Id*.  Immediately following the conversation, the EEO counselor would mail the complainant a package of EEO filing

materials if the complainant requested them.  *Id*.  The package includes a certificate of mailing/certificate of receipt.  When the certificate of receipt is returned to OCRL, it is inserted into the claimant's file.  *Id*.

It is contrary to both OCRL's mission and OCRL's business practice to delete voicemail messages without responding to them, to fail to return calls, to return calls untimely, to fail to mail EEO filing materials to complainants, or to inaccurately record the dates on which contact with complainants took place.  White Decl. ¶ 4.  Incoming-case spreadsheets are business records, kept in the ordinary course of OCRL's business.  Information such as the name of callers, their social security numbers, telephone numbers, e-mail addresses, mailing addresses, information about the issue discussed, and how OCRL responded to the caller is written down on these spreadsheets.  White Decl. ¶ 5.

The incoming-case spreadsheet maintained by the OCRL reflects that Johane Tillery left one message with the TSA Hotline on July 11, 2006.  Her call was returned on July 12, 2006, in accordance with office protocol and as described above.  White Decl. ¶ 6.  Tillery's EEO file reflects that she was sent a package of EEO filing materials on July 12, 2006.  White Decl. ¶ 7.  Any time Tillery called the Hotline and left a message, that contact would have been recorded on the OCRL incoming-case spreadsheet and that call returned.  White Decl. ¶ 8.  In light of OCRL's mission and business practices, it is highly unlikely that Tillery made any initial contact with TSA's OCRL other than the contact recorded on the incoming-case spreadsheet.  White

Decl. ¶ 9.

Although Plaintiff attests that she "attempted to contact an EEO Counselor no less than three to four times a week over [a] 25 to 30 day period," there is no credible evidence - either from Plaintiff or TSA's OCRL - that she made more than one attempt to reach an EEO Counselor. That one attempt was not timely made. To the extent Plaintiff attempts to refute this clear conclusion with a self-serving affidavit, the Court resolves this factual dispute in favor of Defendant. In addition, Plaintiff's assertion that the only way she could contact the OCRL while on leave was by telephone is unsupported and contrary to common sense. Equitable tolling under these circumstances is inappropriate.

Letter to Federal Security Director

Plaintiff also argues that the Court should consider her May 30, 2006 letter to the Federal Security Director ("FSD"), Pete Garcia ("Garcia"), at the airport where she was employed. This letter was received within the 45-day period.

EEOC Management Directive 110 provides that a complainant initiates the EEO process, as contemplated by 29 C.F.R. § 1614.105(a)(1), when she contacts an agency official logically connected with the EEO process and expresses an intent to begin the EEO process. Plaintiff does not explain why FSD Garcia, "the ranking TSA authority responsible for the leadership and coordination of TSA security activities,"[5] should be

---

[5] www.tsa.gov/join/careers/careers_security_jobs_fsd.shtm.

considered an official logically connected with the EEO process, or how her letter to him expresses an intent to begin the EEO process.

In her letter to Garcia, Plaintiff demonstrates a familiarity with the OCRL procedure for initiating an EEO complaint because she tells Garcia that she had previously reported the sexual harassment she experienced from Mr. Davis to the EEOC.  Additionally, while Plaintiff states that she believes she was retaliated against, she does not express any intent in the letter to begin the EEO process anew. Rather, the letter's clear purpose is to "explain the circumstances behind" her being "forced to resign from the TSA."  DE 9-2 at 6.  Because there is no indication whatsoever that Plaintiff's letter to FSD Garcia was intended to begin the EEO process, it does not satisfy the notification requirement of 29 C.F.R. § 1614.105(a)(1).

2.   **Termination**

Plaintiff asserts that in early June 2006, she "was terminated from her employment in retaliation of her complaint."  Compl. ¶ 22.  However, she never made a formal complaint to anyone about being terminated prior to filing the instant lawsuit.  Filing a charge with the TSA's OCRL is a prerequisite to Plaintiff's filing a Title VII action.  *Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277 (11th Cir. 2004).  The Eleventh Circuit Court of Appeals has described the relationship between an EEOC charge and the ensuing judicial complaint as follows:

> The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation.  No action alleging a violation

> of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge.  EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'  *A 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'*

*A.M. Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1332 (11th Cir. 2000) (emphasis added).  Since Plaintiff never filed a claim with TSA's OCRL asserting wrongful termination, her allegations as to this claim were not exhausted administratively and are thus barred.  *Id.*

**Conclusion**

Defendant has met its burden of proving that plaintiff has failed to timely exhaust her available administrative remedies on her claim of Title VII Retaliation.  Plaintiff's response to the motion to dismiss, her exhibits, and her supplemental materials do not show that she ever made a timely EEO contact regarding the alleged retaliatory denial of her transfer request to Tucson[6] or the alleged retaliatory

---

[6] In her supplemental filings, Plaintiff attempts to parse the denial of her transfer into two retaliatory acts: the original denial on April 24, 2006, and Arizona's lack of response to a request she made for reconsideration.  Plaintiff cannot point to a date on which the reconsideration was denied.  Plaintiff proffers that her reconsideration request should be deemed denied on March 29, 2006, reasoning that her reconsideration materials were faxed to Tucson on May 5, 2006, and that two weeks is a reasonable amount of time for these materials to be considered.  DE 19 at ¶¶ 5-6, 9-10.  Assuming Plaintiff made a typographical error and meant May 19, 2006 (two weeks from May 5, 2006), Plaintiff would have had to have made contact with the OCRL on or before July 3, 2006 (45 days from May 19, 2006).  It is undisputed she made contact on July 11, 2006.  Even if this argument was properly before the Court, the initial contact with OCRL was untimely.

termination of her employment.  Nor has Plaintiff demonstrated a basis for tolling the time for her to have filed her claim.  Accordingly, Plaintiff's lawsuit is barred and must be dismissed for failure to exhaust administrative remedies.  Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Complaint **[DE 6] is GRANTED**.  Any pending motions are denied as moot and this case is **CLOSED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of March, 2010.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record
Magistrate Judge Linnea R. Johnson